[No. 1561.]

## JOHN SCHINDLER v. THE STATE.

1. THEFT—PRACTICE—SPECIAL PLEA.—To an indictment for theft in F. county, the defendant pleaded specially the pendency of a prior indictment for the same offense in G. county. To this special plea the State demurred, and the demurrer was sustained. *Held,* correct; the only two special pleas known to our criminal practice being former acquittal and former conviction, except where constitutional rights are involved. The contrary rule, as laid down in Burdett's case, 9 Texas 43, is obsolete since the adoption of the present Code.

2. SAME—EVIDENCE—CHARGE OF THE COURT, to the effect that "upon the trial of any person charged with the theft of any cattle, the possession of such stolen cattle by the accused without a written bill of sale or transfer, containing a specific description of such animal, shall be *prima facie* evidence against the accused that such possession was illegal," is erroneous, as heretofore expounded in *Garcia* v. *The State,* 12 Texas Court of Appeals, 335, and *Flores and Bernal* v. *The State,* 13 Texas Court of Appeals, 665.

3. PRACTICE—CONTINUANCE.—See the opinion for a showing which entitled the defendant to a continuance.

4. SAME—POSSESSION OF RECENTLY STOLEN PROPERTY.—In order to constitute a *prima facie* case of theft by reason of the possession of the stolen property, the evidence must show a concurrence of the following facts: The property must have been stolen by some person; the defendant's possession of the property must have been recent; the defendant must have been called upon to explain his posession, and he must have failed to explain it. The possession of a stolen animal without a written bill of sale, is not, it seems, as strong evidence of guilt as is the unexplained possession of recently stolen property when an explanation has been called for.

5. SAME—STATUTE CONSTRUED.—Article 4563 of the Revised Statutes does not declare that the possession of an animal without a bill of sale is fraudulent, but that it is illegal; nor can it be inferred that the party in possessson of such animal without a bill of sale is a thief.

6. FACT CASE.—See opinion for evidence *held* insufficient to support a conviction for theft.

APPEAL from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

This appeal is prosecuted from a conviction for the theft of two oxen, the property of D. L. Nateo, wherein the punishment awarded was a term of three years in the penitentiary.

The opinion discloses the substance of the entire evidence.

The motion for new trial presented the questions discussed in the opinion, and complained of the action of the court in refusing special charges asked.

*Phelps & Haidusek* filed an able brief for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE. This is a conviction for the theft of oxen. An indictment for this offense was filed in the District Court of Gonzales county on June 23, 1883. On November 21, 1883, this indictment was filed in Fayette county. Upon the trial the defendant pleaded the pendency of the indictment in Gonzales county as a reason why he should not be called upon to plead to this indictment filed in Fayette county. To this plea the district attorney demurred. To the action of the court in sustaining the demurrer, the defendant excepted, and upon such action, assigned as error, appeals to this court.

Was there error in the action of the court below sustaining the demurrer to the defendant's plea? We are of opinion that there was not. Under our Code of Procedure there are but two special pleas, to wit: former conviction or acquittal. If, however, constitutional rights are involved, the defendant would have the right to raise an issue upon them by special plea. We are aware that *Burdette* v. *The State*, 9 Texas Reports, 43, sustains this plea of the defendant. But that opinion was delivered before the adoption of our present Code.

This is a case of purely circumstantial evidence, and it appears that the defendant was in possession of the oxen without

a bill of sale. Upon this phase of the case the learned judge who presided upon the trial charged the jury as follows: "Upon the trial of any person charged with the theft of any cattle, the possession of such stolen animal by the accused, without a written bill of sale or transfer, containing a specific description of such animal, shall be *prima facie* evidence against the accused that such possession was illegal." In *Garcia* v. *The State,* 12 Texas Court of Appeals, 335, and in *Flores* and *Bernal* v. *The State,* 13 Texas Court of Appeals, 665, charges in substance the same as the above were held erroneous. We think the reasoning in those cases sound.

The action of the court in overruling the motion to continue or to postpone, and the sufficiency of the evidence to sustain the conviction, are issues which legitimately arise upon the record, and in order to secure a better understanding of our conclusions thereupon, we deem it necessary to give a condensed statement of the facts proved.

The substance of the testimony of D. L. Nateo, the first witness for the State, was that he resided in Gonzales county, Texas; that early in the spring of 1883, he lost two oxen, which were taken from their range near his house; that one was a black animal, about five years old, branded with the letter T, the down strokes or stems being double; the other was a red, bald faced ox, branded and counter branded V2; that he did not remember the ear marks; that when hunting for the animals he met Mr. Neeley, to whom he described them, and asked him to watch for them; that sometime later, Neeley sent him word that he had the red ox in his pasture near Flatonia; that he, witness, sent to Flatonia and recovered the red ox; that he had never recovered the black one; that the animals were taken without his knowledge or consent; that he did not know the defendant John Schindler, and did not know who took the oxen.

Frank Neeley testified, in substance, that about the first day of May, on his way to Gonzales with cattle, he met Nateo, who described two oxen he had lost and requested witness to keep a look out for them, agreeing to pay witness ten dollars if he, witness, found them. A few days after the return of the witness to Flatonia, some one asked him if he knew who gave the V2 brand, to which the witness replied that the V2 was Mrs. Vanhain's brand. The party then described the red ox, and the witness told him whose ox it was, and asked him to bring the ox to him, witness, which he afterwards did. Witness turned

the ox into Faire's pasture, near Flatonia, and sent word to Nateo, who sent for and got the animal upon an order of witness on Faire. The witness did not know where the defendant Schindler lived. He had never seen Schindler in possession of Nateo's oxen.

Witness Cornelson testified, in substance, that he was a butcher at Schulenburg; that he knew the defendant; that some time in April, 1883, defendant came to him and proposed to sell him two oxen; that he went out to Ernest's slaughter pen, which he was then using, and found two oxen; that one was a black ox branded T (double downward stroke), and the other was a pale red ox whose brands the witness did not notice; that he bought the black ox. but declined to buy the red one as he was too poor for beef; that he paid the defendant ten dollars down and told him to go with him to town and he would pay him the remaining fifteen; that defendant excused himself on the plea of sickness in his family, and left, driving the red ox in the direction of his house; that next day the defendant called on witness and received his balance, and executed to the witness a bill of sale. The bill of sale being introduced from the archives of the county clerk's office, and identified by the witness, read as follows:

"State of Texas, Fayette county.

"Know all men by these presents, that I, John Schindler, for and in consideration of the sum of $25 to me in hand paid by Ling & Cornelson, the receipt of which is hereby acknowledged, have bargained, sold and transferred to the said Ling & Cornelson the following described animal: 1 black ox branded T, marked ᴄᴏ, five years old; to have and to hold unto the said Ling & Cornelson the above described animal, with all the rights, title and privileges that I had on the first day of May, 1883. In witness whereof, I have hereunto set my hand and seal, using scroll for seal, this the first day of May, 1883.

"(Signed)                              JOHN SCHINDLER."

On his cross-examination this witness stated that the butcher pen where the oxen were penned was on the limits of town; that he bought the black ox in the evening, and that defendant drove off the red ox in the day time; that he did not know how far from Schulenburg the defendant lived, but had heard that the distance was about four miles.

A witness for the defense testified that defendant lived about

four miles west of Schulenburg, and that Flatonia is about nine miles west of defendant's house. In driving cattle from his house to Schulenburg, the defendant would have to travel a public road pretty much all the way.

It had been shown that Nateo lived in Gonzales county, about nineteen miles southwest of Flatonia; that Schulenburg was twelve miles east from Flatonia, and that to go from Schulenburg to Nateo's house, the direct route would leave Flatonia three or four miles to the northwest.

When the case was called for trial the defendant made an application to the court for a continuance, or for a postponement until some future day of the term, in order to enable him to secure the attendance, as witnesses, of Frank Andres, Mrs. Mary Schindler and John Polasek. The showing as to diligence was in all respects ample, and the application proceeded to allege that, by the absent witness Andres, he expected to prove that he purchased the animals he is charged to have stolen from the said Andres, at the house of the said Andres, near Schulenburg, Texas, on or about the twenty-sixth day of April, 1883, and that the ox sold by defendant to the witness Cornelson is one of the oxen purchased by the defendant from the said Andres.

By the absent witness Polasek, he expects to prove that one day about the last of April, 1883, the said witness saw a man, who was a stranger to him, pass his, witness's, house, driving the oxen, for the theft of which defendant is charged in this indictment; that the said stranger was driving the oxen in the direction of the home of this defendant, and offered to sell them to the witness; that witness was well acquainted with this defendant, and knew that defendant was not the man who was then driving the oxen as described.

By the absent witness, Mrs. Schindler, his wife, defendant expected to prove that on or about the twenty-sixth day of April, 1883, a man, whom she did not know, drove two oxen up to the house where she and her husband (this defendant) were. That one of the oxen was the black ox afterwards sold by defendant in Schulenburg, and the other a red ox; that after considerable talk, this defendant bought the two oxen of the stranger, placed them in his pasture, which is on a public road, kept them there several days, and drove them to Schulenburg to sell them, since which time the witness had never again seen either of the oxen.

It appears that Mrs. Schindler and the witness, Andres, from whom the oxen were claimed to have been purchased, were in

attendance on the court as witnesses, but left before the cause was reached. As Mrs. Schindler was advised by the counsel for the defense not to return unless her child improved, her child being very sick, we will not discuss the materiality or importance of her evidence.

That the testimony of the other witnesses was of the greatest importance to the defendant cannot be questioned. Under the facts of this case, if defendant could show that some other person was in possession of the oxen prior to his possession, this would most evidently meet the case made by the State. Nor would this fact be in the least in conflict with the theory of the State. We do not think it necessary or required of us to argue this question, it being self evident.

Is this verdict and judgment supported by the evidence? What is the State's case? Simply this: Recent possession of stolen property without bill of sale. Possession of property recently after the theft, *unexplained,* is held to be *prima facie* evidence of theft; and this court has held, and still holds, that there may be cases in which these facts would not only constitute a *prima facie* case, but would be sufficient upon which to convict.

To be a *prima facie* case, the property must be stolen by some person; the possession must be recent; the defendant must be *called* upon to explain and *fail* to explain; and before a *prima facie* case can be made and claimed for the State, all of the above facts must be established by the evidence. That the defendant in this case was in possession of at least one of the oxen is conceded; but where in the record is it shown that he was called upon directly or circumstantially to explain his possession? The record furnishes no information upon this question whatever, and we cannot presume a fact unless there be facts from which to make an inference.

The case of the State, then, is that defendant was in possession of stolen property recently after the theft, without a bill of sale. If recent possession of stolen property, unexplained, constitutes a *prima facie* case, does *such possession,* without a bill of sale, constitute a *prima facie* case of guilt? If *such possession, unexplained, in some cases* constitutes a complete case of guilt, will such possession, in some cases, without a bill of sale, constitute a complete case? (These illustrations proceed upon the supposition that the supposed cases are stripped of all other inculpatory facts.)

A horse is stolen, and shortly afterwards A is found in posses-

sion of the horse. He is charged with the theft, but says nothing, and stands mute—makes no attempt at explanation. This conduct would be very inconsistent with his innocence. He would be a very remarkable man, indeed, not to attempt an explanation of his possession. But suppose a horse is stolen, and shortly afterwards A is found in possession, without a bill of sale, would the fact that he had no bill of sale be as unnatural, strange and inconsistent with his innocence as, under the same circumstances, would be a failure to explain? How often do the most upright and honest men purchase stolen animals and fail to take bills of sale, notwithstanding their possession without a bill of sale is, by the statute, declared illegal.

Article 4563 of the Revised Statutes does not declare that the possession of an animal without a bill of sale is *fraudulent*, but illegal; nor can it be inferred from the said article that the party in possession of said animal without a bill of sale is a thief. We do not believe that the failure to receive a bill of sale of stolen property is as strong and cogent evidence of guilt as a failure to explain, when called upon, a party's possession of stolen property.

We have given this record a very careful investigation, and, after carefully considering the evidence, we are of the opinion that the verdict and judgment are not sustained by the evidence.

Because the court erred in the charge above noted, and because the judgment is not supported by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*